IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


JOHN BROWNING,                          )
                                        )
         Plaintiff,                     )
                                        )
     v.                                 )
                                        )   No. 09 C 4388
AT&T CORP., & COLLECTCO, INC.,          )
d/b/a COLLECTION COMPANY OF             )
AMERICA,                                )
                                        )
         Defendants.                    )


<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff John Browning ("Browning") brought suit against defendants CollectCo.[1], Inc. d/b/a Collection Company of America ("CCA"), and AT&T, Inc. ("AT&T"), in connection with AT&T's efforts to collect a past-due amount of $139.07 on Browning's phone bill. Browning alleges that in April 2008, AT&T placed his account with CCA, a collection agency, and that although he paid the bill in May 2008, CCA persisted in its efforts to collect the debt. According to Browning, CCA phoned an undetermined number of his business contacts and acquaintances in seeking payment of the bill. He also claims that CCA contacted his friend, Milton Cole ("Cole"), divulging that Browning's phone bill was past due, disclosing Browning's account number, and asking Cole to pay the debt.

Browning's complaint asserts six causes of action: violation

---

[1] Browning spells the name "Collecto"; however, AT&T's spelling is "CollectCo."

of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1691, *et seq.* (Count I); violation of the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/1, *et seq.* (Count II); intrusion upon seclusion (Count III); public disclosure of private facts (Count IV); violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1, *et seq.* (Count V); and defamation *per quod* (Count VI). AT&T has moved to dismiss Counts III through V, which are the only counts in which it is named as a defendant. For the reasons the follow, AT&T's motion is granted in part and denied in part.

## I. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint, not its merits. *See, e.g.*, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In resolving a defendant's Rule 12(b)(6) motion, I must accept all well-pleaded allegations in the complaint as true, and must draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).

## II. Discussion

### A. Intrusion Upon Seclusion

Count III of Browning's complaint alleges a claim for "intrusion upon seclusion," one of four separate torts based on the invasion of a plaintiff's privacy. *See, e.g.*, *Duncan v. Peterson*, 835 N.E.2d 411, 422 (Ill. App. Ct. 2005) ("There are four invasion

of privacy torts: (1) intrusion upon seclusion of another; (2) appropriation of a name or likeness of another; (3) publication given to private life; and (4) publicity placing another person in false light."). To make out a claim for intrusion upon seclusion, a plaintiff must show that: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004); *see also Narducci v. Vill. of Bellwood*, 444 F. Supp. 2d 924, 938 (N.D. Ill. 2006). AT&T argues that Browning's complaint fails to satisfy the first of these elements because the alleged "intrusion" into his privacy was not "unauthorized." I agree.

In support of its argument, AT&T cites the Electronic Communications Privacy Act, 18 U.S.C. § 2511 ("§ 2511").[2] In relevant part, the Act provides:

_____

[2] The Telecommunications Act of 1996, 47 U.S.C. §§ 151 *et seq.*, contains a similar provision, which states: "[n]othing in this section prohibits a telecommunications carrier from using, disclosing, or permitting access to customer proprietary network information obtained from its customers, either directly or indirectly through its agents . . . to initiate, render, bill, and collect for telecommunications services." 47 U.S.C. § 222(d)(1). The parties dispute whether § 222(d)(1) can be invoked to authorize AT&T's use of Browning's records in this case. Since I conclude that AT&T's alleged intrusion into Browning's privacy was authorized under the Electronic Communications Private Act, I need not address whether AT&T's conduct might also be authorized under § 222(d)(1).

It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, *to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service*[.]

18 U.S.C. § 2511(2)(a)(i) (emphasis added).

Essentially, AT&T contends that § 2511 allows communications providers, such as itself, to use and disclose customers' records in seeking to protect its rights and/or property. AT&T claims that the past-due amount owed by Browning constitutes its property. As a result, AT&T claims that it was justified under § 2511 in searching and compiling Browning's billing records in trying to collect payment.

AT&T's argument draws substantial support from two decisions of the Illinois Court of Appeals. The first of these, *Schmidt v. Ameritech Illinois*, 768 N.E.2d 303 (Ill. App. Ct. 2002), involved a plaintiff who worked for Ameritech as a customer service technician. *Id.* at 306. He claimed to have suffered a knee injury in June 1994, and went on disability leave until August 1994. *Id.* Prior to his alleged injury, he had received approval to take a fishing vacation from July 15 through July 24. *Id.* The plaintiff's superiors reminded him that under Ameritech's disability policy, he was not permitted to take a vacation while on disability leave. *Id.* at 306-07. He and his wife nevertheless

-4-

attempted to take the vacation surreptitiously. *Id.* at 307. The plaintiff's supervisor became suspicious and placed him under investigation. *Id.* In addition to staking out the plaintiff's home, Ameritech also checked certain of the plaintiff's phone records in an attempt to prove his whereabouts during the week in question. *Id.* Based on the records, Ameritech ascertained that the plaintiff had indeed taken a vacation at a resort in Canada. *Id.* at 308. The plaintiff brought an intrusion-upon-seclusion claim against Ameritech, alleging that the company had improperly reviewed his phone records. *Id.* at 309.

Although the jury found in the plaintiff's favor, the verdict was overturned on appeal. Ameritech argued, among other things, that its review of the plaintiff's records was authorized by § 2511(2)(a)(i). The court agreed, holding that "Ameritech's conduct was a necessary incident to the protection of its rights or property," and that "'rights or property' includes Ameritech's monetary resources." *Id.* at 314. The court explained:

> The result of engaging in such a practice is that Ameritech unnecessarily would be depleting its monetary resources to fund an employee's vacation twice over, if and when that employee then decides to take an "official" vacation and has that vacation time deducted from his or her account. In other words, Ameritech essentially would be funding the equivalent of two employees' vacations while only receiving the benefit of one employee's work. Because Ameritech's investigation into an unnecessary depletion of its monetary resources necessarily involves a protection of its rights and property, especially in light of [the plaintiff's] admittedly deceitful actions, we find that Ameritech's conduct was authorized and protected specifically by this statute. Accordingly,

-5-

because plaintiffs cannot demonstrate that Ameritech's conduct was unauthorized, i.e., the first element of the tort, we find that the jury's verdict in favor of the plaintiffs was against the manifest weight of the evidence.

*Id.* at 315.

The next year, the Illinois Court of Appeals decided *Morris v. Ameritech Illinois*, 785 N.E.2d 62 (Ill. App. Ct. 2003), another case involving the application of § 2511 in the context of an invasion-of-privacy claim. There, Ameritech suspected that the plaintiff, who worked for the company as an installer, was not putting in a full day's work. *Id.* at 64. After placing him under surveillance, the plaintiff's truck was spotted in the driveway of his home on several occasions during working hours. *Id.* In addition, the plaintiff's supervisor reviewed his phone records, which indicated that the plaintiff had made calls from his home on several occasions during business hours. *Id.* When the plaintiff later sued Ameritech for invasion of privacy, the appellate court upheld the lower court's dismissal of his claim, noting that "Ameritech has a property interest in not paying its employees, like [plaintiff], for work at times when the employees are at home and not working," *id.* at 70, and that "under *Schmidt*, federal law authorized Ameritech to use its records, including MUD [message unit detail] records, to protect its rights and property," *id.*

To be sure, neither *Schmidt* nor *Morris* is binding here. *See, e.g., Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1301

(7th Cir. 1995) ("When determining issues under Illinois law, [federal courts] apply the law that would be applied in this context by the Illinois Supreme Court . . . . We are obliged to consider the holdings of state appellate courts, but are not bound to do so if we have good reasons for diverging from those decisions.") (citation omitted). Nevertheless, I find the reasoning in these cases to be persuasive. Just as § 2511 authorized Ameritech's inquiry into the plaintiff's phone records in *Schmidt* and *Morris*, it also authorized AT&T's use of Browning's records in this case. Here, as in *Schmidt* and *Morris*, AT&T used the information for the purpose of protecting its monetary resources. It is true that the statute authorizes the interception and disclosure of "communications." At first blush, Browning's billing records might not seem to fall within this category. But this is true of *Schmidt* and *Morris* as well, which involved records indicating the time and date of Thomas's phone activity, rather than the actual communications themselves.

Importantly, Browning fails to marshal any case authority to the contrary. Instead, he argues that *Schmidt* was a "misguided aberration." Resp. at 8. Accordingly, I conclude that AT&T's purported intrusion into Browning's seclusion was authorized, and that consequently, Browning's intrusion-upon-seclusion claim must be dismissed.

Yet even assuming that AT&T's intrusion into Browning's seclusion were not authorized under § 2511, Browning's intrusion-upon-seclusion claim would still require dismissal. This is because, as indicated above, proving a claim for intrusion upon seclusion requires the plaintiff to show that the *intrusion* into his privacy (as opposed, say, to the subsequent *disclosure* of the private information) was the cause of his alleged injury. *See, e.g.*, *Schmidt*, 768 N.E.2d at 315 ("[A]nyone seeking recovery under the unreasonable intrusion upon seclusion tort must prove that the *intrusion* caused anguish and suffering.")(emphasis in original). Here, Browning does not claim that AT&T's examination of his billing records was somehow the cause of his embarrassment and emotional distress. Rather, the complaint's allegations make clear that the alleged harm -- his embarrassment, stress, and inconvenience -- occurred only when the information was later disclosed to third parties (i.e., Cole and certain unidentified business associates).

Browning attempts to avoid this conclusion by asserting that, regardless of whether AT&T itself intruded into his privacy, AT&T is nonetheless "responsible for its agent's actions that caused the intrusion into Mr. Browning's seclusion." Pl.'s Resp. at 10. In other words, Browning contends that it was CCA's actions that constituted the intrusion upon his seclusion, and that since CCA can be considered AT&T's agent, AT&T is vicariously liable for

-8-

CCA's conduct. I discuss the issue of agency more fully below in connection with Count IV of Browning's complaint. For purposes of Browning's intrusion-upon-seclusion claim, however, the issue is of no moment. For even assuming that CCA acted as AT&T's agent, Browning's argument still ends in a blind alley: his complaint simply provides no explanation of how CCA's actions could be construed as an *intrusion*. According the complaint, CCA merely received the private information from AT&T; it did not conduct any independent inquiry of its own into Browning's phone or billing records. True, CCA is alleged to have divulged Browning's private information to others, but as already discussed, the subsequent publication of private information is irrelevant to a claim for intrusion upon seclusion.

Browning puts forth one further argument in an attempt to show that § 2511 cannot be used to authorize AT&T's gathering and examination of his phone records. Specifically, Browning points out that, according to the text of the provision, § 2511 applies only where a communications provider is attempting to *protect its rights or property*. Browning claims, however, that "[a]t all times after May 2, 2008, AT&T was not protecting its property interests with John Browning because it had none, he had already paid his bill." Resp. at 4. As a result, he claims, § 2511 does not justify AT&T's scrutiny of his private records.

This argument is without merit. First of all, at the time that the alleged "intrusion" took place -- i.e., when AT&T first inquired into Browning's records -- Browning's bill had not been paid. According to the complaint, Browning claims to have received notice of the overdue bill in April 2008. Any intrusion into his records must have taken place before that time. Hence, at the time AT&T collected the records, it was still seeking to recover its debt from Browning. Nor does Browning allege that there were any further intrusions that took place after he had allegedly paid his bill. In sum, any intrusion that might serve as a basis for Browning's claim can only have taken place while AT&T was seeking to protect its monetary interests.

For these reasons, Browning's intrusion-upon-seclusion claim is dismissed insofar as it is asserted against AT&T.[3]

---

[3] In concluding his discussion of Count III, Browning claims that he has alleged all of the elements necessary to make out a claim for false light invasion of privacy. Resp. at 10. These elements are:

(1) that he or she was placed in a false light before the public as a result of the defendant's action, (2) that the false light in which he or she was placed would be highly offensive to a reasonable person, and (3) that the defendant acted with knowledge that the information published was false or with reckless disregard for whether the information was true or false.

*Myers v. The Telegraph*, 773 N.E.2d 192, 201 (Ill. App. Ct. 2002). Browning argues that even if his intrusion claim fails, he can simply change its label and substitute a false light invasion of privacy claim in its place.

This argument is much too facile. While Browning is correct

**B.    Publication of Private Facts**

Count IV of Browning's complaint seeks to hold AT&T liable for publication of private facts, another of the torts falling under the "invasion of privacy" rubric.  To state a claim for public disclosure of private facts, "a plaintiff must plead that: (1) publicity was given to the disclosure of private facts; (2) the facts were private, and not public, facts; and (3) the matter made public was such as to be highly offensive to a reasonable person." *Cordts v. Chicago Tribune Co.*, 860 N.E.2d 444, 450 (Ill. App. Ct. 2006) (quotation marks omitted); *see also Chisholm v. Foothill Capital Corp.*, 3 F. Supp. 2d 925, 939 (N.D. Ill. 1998).  AT&T argues that the claim must be dismissed because it was CCA, not AT&T, that allegedly disclosed Browning's private information.

that complaints are not required to plead a specific legal theories, *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 (7th Cir.1999), he provides no argument whatsoever to support his assertion that he has alleged all of the necessary elements of a false light invasion of privacy claim.  Instead, Browning merely lists the elements of the cause of action and announces that he has sufficiently plead each of them.  It is far from clear, however, that he can in fact meet all of the claim's elements.  At a minimum, for example, it is doubtful whether Browning has alleged facts sufficient to establish element (3) above, i.e., that AT&T acted with knowledge or reckless disregard that its statements were false.

In any event, since Browning has failed to provide any argument in support of his contention that he has alleged a claim for false light invasion of privacy, I decline to consider the issue here.  *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 244 (7th Cir. 2003) (declining to consider an argument that party had failed to develop).

AT&T additionally claims that, even if it had disclosed the information, Browning's claim still would fail because the number of people to whom the information was disclosed is too negligible to meet the claim's "publicity" requirement. I disagree.

AT&T first argues that it is not liable for publicly disclosing Browning's private information because it was CCA, not AT&T, that shared the phone billing information with Cole and other alleged third persons. However, Browning contends that CCA was acting as AT&T's agent when CCA disclosed the information and that, consequently, AT&T is vicariously liable for CCA's conduct. Against this, AT&T argues that CAA cannot be regarded as having acted as its agent because CCA is a debt collector, and debt collectors, as a matter of law, are independent contractors, not agents of the creditors with whom they work. Since CCA is a debt collector, AT&T contends that it cannot be regarded as having had an agency relationship with CCA.

AT&T's argument quickly begins to unravel under scrutiny. The case that AT&T cites in support of its argument, *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004), was decided under the FDCPA. Many courts have held that debt collectors are independent contractors for purposes of the FDCPA. *See, e.g., Frascogna v. Wells Fargo Bank, N.A.*, No. 3:07CV96, 2009 WL 2843284, at *3 (S.D. Miss. Aug. 31, 2009) (citing cases). However, AT&T offers no

argument for extending *Randolph*'s holding to common law tort claims such as the public disclosure claim at issue here.

Indeed, since Browning's public disclosure claim arises under Illinois state law, I must look to Illinois law, not federal law, in order to determine whether CCA can be regarded as having acted as AT&T's agent. *See, e.g.*, *F.D.I.C. v. Wabick*, 335 F.3d 620, 625 (7th Cir. 2003) ("[G]enerally speaking, the *Erie* doctrine applies to non-diversity cases where state law supplies the rule of decision."); Charles Alan Wright, et al., 19 Fed. Prac. & Proc. Juris. § 4520 (3d ed. 2009) (absent a definable federal interest to the contrary, federal courts should apply state law to legal issues in both diversity and non-diversity cases). And under Illinois law, the issue of whether two parties have an agency relationship is a question of fact.[4] *See, e.g.*, *Am. Envtl., Inc. v. 3-J Co.*, 583 N.E.2d 649, 654-55 (Ill. App. Ct. 1991); *Doyle v. Shlensky*, 458 N.E.2d 1120, 1131 (Ill. App. Ct. 1983). Notably, in at least one case, the Illinois Court of Appeals specifically held that collection agencies are not always to be regarded as independent contractors vis a vis creditors. *Sherman v. Field Clinic*, 392

---

[4] To be sure, Illinois courts have held that in some cases, the existence or non-existence of an agency relationship is so clear as to be incontrovertible. *See, e.g.*, *Doyle v. Shlensky*, 458 N.E.2d 1120, 1131 (Ill. App. Ct. 1983) ("[W]hether an agency relationship exists is generally a question of fact. This is not the rule, however, where . . . parties' relationship is so clear as to be undisputed.") (citation omitted). The facts of this case are much too indeterminate to fall within this category.

N.E.2d 154, 158 (Ill. App. Ct. 1979); *see also Simpson v. Merch.*
*Recovery Bureau, Inc.*, No. 97 C 7568, 1997 WL 781710, at *1 (N.D.
Ill. Dec. 12, 1997) ("Whether a statutory 'collection agency,'
despite its label as such, is not really an agent but is rather an
independent contractor -- something that might perhaps insulate the
creditor from statutory liability -- is at worst a factual
issue."). Whether CCA can be deemed to have acted as AT&T's agent
is therefore a factual matter and cannot be decided on a motion to
dismiss.

AT&T goes on to argue, however, that even if it could be held
vicariously liable for CCA's actions, Browning's public disclosure
of private facts claim would still require dismissal because the
group of people to whom the private information was allegedly
revealed is too small to be actionable. As AT&T points out, the
"publicity" element of a public disclosure claim generally requires
the plaintiff to show that the plaintiff's private information was
disclosed to the public at large. *Cordts*, 860 N.E.2d at 450. AT&T
acknowledges that Illinois courts have carved out an exception to
this rule, holding that "the publicity requirement may be satisfied
where a disclosure is made to a small number of people who have a
'special relationship' with the plaintiff." *Id.* at 450-51.
However, AT&T argues that this exception does not apply here
because Browning does not have a special relationship with the
people to whom his private information was allegedly disclosed.

Specifically, AT&T argues that the "special relationship" exception does not apply where information is disclosed to *business acquaintances.*

Once more, however, AT&T's argument does not hold up under scrutiny. In support of its claim, for example, AT&T cites *Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1285 (N.D. Ill. 1996). However, *Chisholm* never held that the special relationship exception was inapplicable in the case of business acquaintances. On the contrary, the court in *Chisholm* dismissed the plaintiff's claim precisely because she failed to allege that she had a special relationship with the business associate to whom her information was revealed. Here, by contrast, Browning alleges that he *does* have a special relationship with the individuals in question.

Furthermore, Browning does not allege only that his private information was shared with his business acquaintances; he also contends that his information was shared with Martin Cole, whom Browning identifies in the complaint as his friend. The question thus becomes whether the special relationship exception applies where private information has been disclosed to a group of people consisting of at least one friend and an unspecified number of business acquaintances.

It is true that friends and business acquaintances are not among the groups frequently identified by Illinois courts as

falling into the "special relationship" category.  Typically, the groups mentioned are "fellow employees, club members, church members, family or neighbors."  *Walker v. Braes Feed Ingredients, Inc.*, No. 02 C 9236, 2003 WL 1956162, at *5 (N.D. Ill. April 23, 2003) (quotation marks omitted).  However, Illinois courts have stated clearly that this list is not exhaustive.  *Id.* (citing *Kurczaba v. Pollock*, 742 N.E.2d 425, 437 (Ill. App. Ct. 2000)).

It is also true that Browning vacillates in his allegations concerning the individuals to whom his private information was revealed.  Martin Cole is the only individual whom Browning identifies by name.  Beyond this allegation, it is unclear how many other individuals may have been exposed to the private facts at issue in the case.  The complaint alleges that Browning was told by a CCA representative that "CCA mistakenly called several people 'from his account.'" Compl. ¶ 17.  In addition, Browning later alleges that the information was disclosed to "numerous third parties," Compl. ¶ 37, and to "several of his contacts," Compl. ¶ 42.  At the same time, the complaint seems to acknowledge that Browning has no way of knowing how many others might have been told.  Compl. ¶ 18.[5]

_____

[5] In his response brief, however, Browning alleges that "[a] call log recently disclosed by [CCA] shows that three individuals from John Browning's phone records were contacted by [CCA]" and that "[a]ll three are real estate brokers and business acquaintances of Mr. Browning, who is also a real estate broker." *See* Resp. at 2 n.1.

In short, neither of the parties has presented a convincing case with respect to whether the special relationship exception applies here. Given that I must view the facts in the light most favorable to Browning, and that I must also draw all reasonable inferences in his favor, I decline to hold that Browning has failed to meet the "publicity requirement" in connection with his public disclosure claim. Accordingly, I deny AT&T's motion to dismiss Count IV of the complaint.

## C. The Illinois Consumer Fraud Act

Finally, in Count V of his complaint, Browning alleges that AT&T has violated the Illinois Consumer Fraud Act. To state a claim under the ICFA, a plaintiff must prove that: "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Dubey v. Pub. Storage, Inc.*, --- N.E.2d ---- (Ill. App. Ct. 2009). Browning's ICFA claim is unpersuasive for several reasons.

First, AT&T argues that its conduct is protected by virtue of an exception specifically recognized in the ICFA. In particular, AT&T points to 815 ILCS 505/10b, which provides that "[n]othing in this Act shall apply to . . . [a]ctions or transactions specifically authorized by laws administered by any regulatory body

or officer acting under statutory authority of this State or the United States." AT&T claims that its disclosure to CCA is expressly authorized under federal law (and FCC regulations) and that, consequently, it has not violated the ICFA. Specifically, AT&T relies on a provision of the Telecommunications Act of 1996, 47 U.S.C. §§ 151 *et seq.*, which provides: "[n]othing in this section prohibits a telecommunications carrier from using, disclosing, or permitting access to customer proprietary network information obtained from its customers, either directly or indirectly through its agents . . . to initiate, render, bill, and collect for telecommunications services." 47 U.S.C. § 222(d)(1). AT&T argues that § 222(d)(1) authorizes its use of Browning's information, and that under section 505/10(b) it therefore cannot be held liable under the ICFA.

On its face, this argument is perhaps less than compelling.[6] However, Browning has failed to make any argument in opposition to AT&T's position. When "presented with a motion to dismiss, the

_____

[6] As explained in note 2, *supra*, AT&T invokes 47 U.S.C. § 222(d)(1) as a defense against Browning's intrusion-upon-seclusion claim, and I have prescinded from the merits of that question. Here, I merely note that difficulty, as a *prima facie* matter, of applying § 222 as a defense in the context of an ICFA claim. The provision's plain language has to do with the use and disclosure of private information. While a colorable claim can therefore be made that this authorizes AT&T's alleged intrusion into Browning's private information, it is unclear how § 222 might be thought to authorize the kind of deceptive and unfair conduct of which AT&T is accused under Browning's ICFA claim.

non-moving party must proffer some legal basis to support his cause of action. The federal courts will not invent legal arguments for litigants." *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995) (citation omitted). As a result, Browning has forfeited the argument. *See, e.g.*, *Blackwell v. Kalinowski*, No. 08 C 7257, 2009 WL 1702992, at *4 (N.D. Ill. July 18, 2009) (citing *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (plaintiffs' failure to oppose defendant's argument constitutes a waiver).

Regardless of whether AT&T is protected by section 505/10b, however, Browning's ICFA claim does not survive because neither of the deceptive acts of which he complains is able to satisfy the Act's requirements. Specifically, Browning argues that "AT&T's deceptive conduct is comprised of two actions, the disclosure to Mr. Browning's business acquaintances that he owed AT&T a debt, when he did not, and AT&T's statements in its privacy policy which were violated." Resp. at 13. The problem with the first of these allegedly deceptive acts is that, by its plain terms, it was directed not towards Browning, but to his friend and associates. Browning does not explain how he can assert a claim under the ICFA based on deceptive communications made to individuals other than himself.[7]

---

[7] Courts have occasionally held that a claim can be stated under the ICFA even where the alleged deceptive statements are not directed specifically at the plaintiff. However, these cases are

-19-

The second deceptive statement alleged by Browning also fails to support a claim under the ICFA because, simply put, the statement is not deceptive. The alleged misrepresentation, according to Browning, is found in AT&T's privacy policy. In relevant part, the policy reads:

**Information Sharing**

> With AT&T Companies: Subject to applicable legal restrictions, such as those that exist for Customer Proprietary Network Information (CPNI), the AT&T companies may share your Personal Information with each other to make sure your experience is as seamless as possible, and to make sure you have the full benefit of what AT&T has to offer.
>
> With Non-AT&T Companies: We share your Personal Information only with non-AT&T companies that perform services on our behalf, and only as necessary for them to provide those services to you.
> • We require those non-AT&T companies to protect any Personal Information they may receive in a manner consistent with this policy.

---

typically brought by corporate plaintiffs or involve allegations that the defendant was engaged in an attempt to deceive the public generally. *See, e.g.*, *Russian Media Group, LLC v. Cable Am., Inc.*, No. 06 C 3578, 2008 WL 360692, at *3 (N.D. Ill. Feb. 7, 2008) (noting that "[c]ourts have allowed businesses to sue under the ICFA for competitive injury when other businesses deceive customers" and that in "such situations, there is no requirement that the deceptive conduct be aimed at the plaintiff"); *Recreation Servs., Inc. v. Odyssey Fun World, Inc.*, 952 F. Supp. 594, 597 (N.D. Ill. 1997) ("Where . . . the [ICFA] claim is asserted instead by a business competitor that charges defendant with deceptive conduct aimed at the consuming public . . . it clearly makes no sense to require that the plaintiff competitor itself must have relied on the deception."). Browning offers no indication that he wishes to make such an argument or intends to invoke this line of cases.

- We do not provide Personal Information to non-AT&T companies for the marketing of their own products and services without your consent.

In Other Circumstances: We may provide Personal Information to non-AT&T companies or other third parties for purposes such as:
- Responding to 911 calls and other emergencies;
- Complying with court orders and other legal process;
- Enforcing our agreements and property rights; and
- Obtaining payment for our products and services, including the transfer or sale of delinquent accounts to third parties for collection

AT&T's Motion to Dismiss, Ex. 1 at 2.

Browning argues that the policy is deceptive because in it, AT&T states that it will share customers' private information with non-AT&T companies that perform services on its behalf "only as necessary for them to provide those services" to customers. Resp. at 13. According to Browning, the details disclosed to CCA (including, for example, the phone numbers of individuals he had contacted) were not necessary for the collection of his purported debt). But this argument misconstrues the policy. While the first paragraph announces that it will disclose personal information "only as necessary," this statement addresses AT&T's disclosure of information to other companies who cooperate with AT&T in providing *services to AT&T customers*. By contrast, the allegedly deceptive statements at issue in Browning's suit were not made in the context of providing services to AT&T customers; rather, they were made in the context of AT&T's attempt to collect on a debt. Such statements are addressed in the third paragraph above, which states

that AT&T may provide personal information to third parties in the course of attempting to collect debts. The policy makes no representation that it will divulge information "only as necessary" under such circumstances. Thus, to the extent that AT&T may have disclosed unnecessary information about Browning to CCA -- an issue on which I express no opinion here --AT&T was acting entirely in conformity with its privacy policy.

Lastly, Browning claims that AT&T violated the ICFA by engaging in "unfair practices." Resp. at 14. Browning correctly points out that the ICFA can be violated not only where a defendant makes misrepresentations but also where a defendant engages in unfair practices. *See, e.g.*, *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, No. 07 C 1611, 2009 WL 1607587, at *5 (N.D. Ill. June 9, 2009) ("The ICFA prohibits not only deceptive trade practices, but also unfair practices."). In determining what constitutes an "unfair practice," courts must consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Id.*

Browning's argument on this point is much too slapdash and truncated to be persuasive. For example, Browning argues that AT&T's actions offend public policy because "[v]iolating the FDCPA as well as affirmatively promising customers that there [sic] information will be protected while at the same time disclosing

-22-

their information violates public policy." Resp. at 15. But Browning has not shown any violation of the FDCPA; and in any event, as already discussed, AT&T's privacy policy is not deceptive and does not make any false promises.

Browning also half-heartedly asserts that AT&T's conduct was "unfair" under the ICFA because it was "oppressive." Hence, Browning claims that in "[i]n considering an award of actual damages under the FDCPA, a Plaintiff may be compensated for emotional distress and mental anguish even without proving the elements of the state law cause of action for intentional infliction of emotional distress." Resp. at 15. He goes on to claim that "[a]ctual damages not only include any out of pocket expenses, but also damages for personal humiliation, embarrassment, mental anguish or emotional distress." *Id*. These two remarks constitute everything Browning has to say on the issue of "oppression." I find the relevance of these remarks to be unclear; what is clear, however, is that they do not even approach a showing that AT&T's practices are oppressive.

For these reasons, I conclude that Browning has failed to state a claim against AT&T under the ICFA. Accordingly, AT&T's motion to dismiss Count V of Browning's complaint (insofar as the claim is alleged against AT&T) is granted.

### III. Conclusion

For the reasons discussed above, AT&T's motion to dismiss is granted in part and denied in part.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated:  December 11, 2009